our first case for argument this morning is 153032 Muller v. GPO. Mr. Landon, whenever you're ready, sir. Good morning, Your Honors. We believe that the issue that the court must consider is simply that the government failed to make a timely objection to the date of the arbitration and did not notify FMCS or the arbitrator that a provision in the contract was to be relied upon by the government and simply allowed the time to pass four months after invoking arbitration. What is it in the contract that would compel the government to do what you say it should have done and did not do? Compel the government to notify the arbitrator FMCS? Yes. There is nothing explicit in the contract that compels the government, but if you examine the joint appendix at 845, notice was given to both parties. If there were any action required by FMCS or the arbitrator, they were supposed to let them know. How long do these arbitrations take? Are you familiar with the arbitrations themselves? Have you participated in them? I'm sorry. How long do they last? How long do these arbitrations take, typically? Does the hearing a one-day matter? How long does it take to happen? The hearing can go one day, two days, three days, four days. How long do you think the arbitration would have taken place in this case? At least two days. So the arbitrator had the case and was notified that he was the arbitrator three weeks before the deadline and he didn't do anything to move the case forward. Do we know why he didn't do anything? Was he too busy? What was the problem? Well, I think under the regulations, he has 14 days to notify the parties that he's been appointed. The problem here is that he had no knowledge of the provision in the contract at step four, that if the hearing did not occur within four months, that he would have to address the issue. Doesn't the arbitrator get a copy of the arbitration agreement? He must. Not initially. That's generally going to be the case once he sets the hearing and the parties appear. The parties appear and provide him with a copy of the agreement? Exactly. Because he generally would ask for a submission and if it's a contractual issue, the contract, of course, would have to be presented to the arbitrator. Is this particular arbitrator arbitrated other grievances under this collective bargaining agreement? Not to my knowledge. No. How do you understand? I mean, the agreement says four months. Is it your understanding of the agreement if the agency, if the government, just sat on its hands and didn't do any striking of the arbitration list and exceeded? It sounds like, it seems to me like a very, very unusual provision. Because in theory, not suggesting that the government would necessarily act in bad faith, but it seems like there are numerous circumstances in which we would exceed four months here. And if it's true that if you exceed four months, you lose your right to go to arbitration, that seems pretty draconian. Well, the government takes the position that if the hearing does not occur within four months, they're no longer bound to proceed to a hearing on the merits. And what is your position? What is the import of that deadline? What are the consequences of not following the four-month deadline? That deadline, in our opinion, was nothing more than a goal analogous to the Merit Systems Protection Board goal, which also appears in our brief, of a 120-day period that the board says it will adjudicate a particular case. But it recognizes that as a goal, and for good cause, it has extended that period. And nobody has ever suggested that the failure of the Merit Systems Protection Board to comply with the 120-day deadline would result in the employee losing, right? I think one case, I think an issue was raised early on, I think back in the late 80s or the 90s, but it tells you in the judge's handbook that it's simply a goal. And for good cause, that time period can be extended. Well, there are plenty of Supreme Court and Court of Appeals cases, including cases from this court, that suggest that agency deadlines like that are housekeeping matters and that the agency doesn't lose the authority to act once the time runs. So that would support your suggestion that it's a goal rather than a requirement. Is there any indication that this arbitration provision for a month was modeled after the 120-day provision in the statute for the MSPB? I'm not familiar with the negotiations that led to this particular provision. The first thing that came to my mind when I observed it was that it was patterned after the NLRB. I mean, I'm sorry, patterned after the MSPB provisions. But the difficulty with that is that you mentioned that under the MSPB provision, there's a manual or something that describes this as being a goal, right? Exactly, the judge's handbook. Here we have none of that, but what we do have is an arbitrator. I mean, there's no question that he has the jurisdiction right to decide questions of arbitrability. Exactly. So here we have an arbitrator who the parties have agreed to be the one charged with interpreting the contract. And so don't we have to give a substantial amount of deference to his interpretation? Deference on procedural questions are generally accorded to the arbitrator by this court and others. However, that deference has to be viewed in the light, I believe, of fundamental fairness. The arbitrator, by regulation, has the authority to conduct the hearing. And that's FMCS regulation. So when the parties negotiated this particular provision and consented to take their disputes at the fourth step to FMCS for the appointment of an arbitrator, the parties knew at that time that they had no control over being able to enforce that particular provision for four months. Once it went to the arbitrator. Exactly. Is the question of the interpretation of the contract a question of law or a question of fact? I think it could be a mixed question. As it relates to the interpretation of that particular provision, I think the arbitrator probably treated it as a mixed question. Under Section 11E of the agreement, it says that the arbitrator has to decide the case within 30 days of the hearing. Are you aware of any consequences as a result of that not occurring? As a matter of practice, there are no consequences. You can complain to FMCS that the arbitrator has not rendered the decision within 30 days, and FMCS will have to decide what sanction will be imposed against the arbitrator. But as a matter of practice, they do basically whatever they feel like doing when they want to do it. These past practice cases that the government relies on, are those all cases in which the case never got to an arbitrator within the four-month period? Absolutely, and we state that in our brief as we examine each particular case that the government relies upon. Not one of those cases involved an arbitration. In fact, only one of the cases involved an issue about selecting an arbitrator. But never has the government ever relied upon that provision to stop an arbitration once the arbitrator had been selected. Okay, you're into your rebuttal time. Why don't we hear from the government and we'll preserve the remainder of your time. I'm sorry? You're into your rebuttal time, so why don't we hear from the government and we'll save the remainder of your time. Alright, thank you. May it please the court. Does the government agree that if this four-month provision were in a statute governing agency procedures, that the failure to decide within the four-month period would have no consequence? It would be an extremely different case because... No, but answer my question. Do you agree that if we were dealing with an agency and a hearing deadline, and the agency let the deadline go past, that that would not have any consequence? Certainly. If this were analogous to the board requirement for the policy, which is what the board says, of rendering a decision within 120 days, that would not redound to the detriment of the parties. Okay, so why shouldn't the same rule apply here since the statute provides that the same standard of review will apply to arbitrator decisions as to agency decisions? Because the parties agreed on the four-month deadline, and the context and structure of the collective bargaining agreement demonstrates that this is a mandatory requirement, and the facts of this case demonstrate... What are they supposed to do? I suppose the arbitrator had the case three months before the end of the deadline, and he's busy and he doesn't do anything, and so the hearing is not held within the four months. Are you suggesting that under those circumstances that the employee would lose? No, Your Honor. There is flexibility built into the four-month deadline. It states that the parties can mutually agree to extend the deadline. Well, suppose the government refuses to agree, and the deadline goes. I mean, the way this arbitrator's decision reads, it doesn't make any difference what the cause of exceeding the four-month period is. The employee loses. Well, if this were a situation where the union had acted with due diligence, had circumstances beyond the union's control prevented the matter from going to a hearing within four months, and the union had requested an extension but been denied, the union could certainly argue to the arbitrator that the agency had unreasonably or arbitrarily refused consent, and that would be a matter for the arbitrator to decide and for this court to review. Well, it's the arbitrator's own fault under those circumstances. You know, even under the Federal Arbitration Act, one of the provisions for setting aside an arbitrable award is that the arbitrator didn't do what he was supposed to do, and under my hypothetical, we have a situation in which the arbitrator didn't do what he was supposed to do, and can it really be that the arbitrator's failure results in the employees losing? Your Honor, that would be a situation where the union would have to argue, assuming that the agency would refuse consent in that situation, which hopefully the agency would not refuse consent in that situation, but if the agency did, the union could argue to the arbitrator and then to this court that the agency unreasonably withheld consent, and thereby the four-month deadline would still be given effect, but there is this flexibility built into it. But take my hypothetical. The government doesn't agree to an extension, and the arbitrator just says, I'm busy, I can't get to it in the four months. Does the employee lose? No, the employee can appeal, can preserve the matter to the arbitrator, and assuming the worst-case scenario… Okay, so it comes up to us. What do we do? We say, the employee loses or the employee wins? I think the question would be whether the facts at issue in the case evidence a situation where the agency, in order to ensure that both sides essentially get the benefit of the bargain, that the agency had to consent in that situation. Otherwise, it would be… So the employee wins under those facts? I can envision a situation, depending on the facts at issue, in which the employee might win in that case, but that's far from the case we have here. The arbitrator had three weeks to conduct the arbitration. Certainly, that was enough time to hold a hearing within the four-month period, right? The arbitrator was notified by FNCS, and notably… Wait, wait. Try answering my question. He had the case three weeks before the end of the deadline. That was enough time to hold a hearing, right? Yes. Depending on the arbitrator's schedule and the union's schedule and the agency's schedule, perhaps it could be. But before the case even got to that point, the union waited first six weeks before even seeking the list of arbitrators. So that's one and a half months out of… There was three weeks. There was enough time to hold the hearing. I could understand if the union failed to select an arbitrator, failed to meet deadlines, failed to act diligently, and the arbitrator wasn't appointed in a timely way. I could understand your position in that case. But where the arbitrator has the case three weeks before the deadline, and the deadline could have been met, why is the employee lose as a result of that? I'm having trouble understanding that. Well, the four-month deadline applies even after the arbitrator has been selected. The deadline doesn't say that the arbitrator shall be selected within four months. It says that the arbitration hearing will occur within four months, and the four-month deadline is located after the provisions addressing the selection of the arbitrator. So the structure of the agreement demonstrates that the four-month deadline is intended to apply even after the arbitrator has been selected. Let me ask you, I guess, two different questions. One is that you suggested up front that you inserted that this was the union's fault, that the union somehow acted in a dilatory fashion. I read the arbitrator as saying, no, the contract is clear and unambiguous. I'm going to enforce this irrespective of whether the parties were diligent or not. Right? I mean, isn't that your reading of the arbitrator? The arbitrator said that, then the arbitrator went on to make a finding of fact that here, the union – Yeah, but isn't that odd? I mean, I agree with you. He seems to say the contract requires that the contract is unambiguous, end of story, and then he has this odd sentence which says more important. So it seems like he thought this was an important factor. There is ample evidence in the record, although none is required contractually. So do you think the standard is you do the contract, but it requires that you also – the contract is clear, but it also requires a finding that the union acted in a dilatory fashion? I think the question is, based on the language, the only reason to extend the deadline according to the party's own agreement is if the parties mutually consent. So that's an easy, straightforward question. In a case like this one, where there was no extension requested by the union, that's not an issue here. But in a similar provision governing an agency, it wouldn't be more than a housekeeping rule. It would be merely a goal. As the handbook says, why should we construe this contract as having this draconian consequence that even though the arbitrator had the case in time to make a decision, the employee loses? The reason is that the hallmark of arbitration is that the parties can agree on what procedures will apply. But they didn't agree that the employee would lose after four months. It doesn't say that. They clearly intended for there to be a consequence for the failure to meet the four-month deadline. Why? Because otherwise the agency would be in an extremely difficult position. If contrary to the agency's practice, since at least September 2008, if we're assuming that the four-month deadline does not require cancellation of the arbitration if it's not met, then the agency would be in the position of having to wait and divine or speculate how much of a delay is long enough before it can terminate an arbitration based on abandonment. If that's true, if that's correct, Judge Stoll pointed out that the parties also agreed that the arbitrator will issue his decision or her decision within 30 days. What are the consequences if the arbitrator does not meet that 30-day deadline? Is your view that the employee automatically loses because the union contracted to have it come within 30 days? Who suffers from the breach of that provision? No, I think that Mr. Landon addressed that this could be a matter that could go up to FMCS. The arbitrator must essentially, in order to be paid for the arbitration, must hold the hearing. The arbitrator is paid for his or her services. It's also a different provision because the fact that the party's mutual agreement is required to extend the four-month deadline demonstrates that it is intended to have some meaning. By saying when the provision can be extended, impliedly, it otherwise cannot be extended. So is the answer the employee does not lose if the arbitrator takes more than 30 days? I think the answer would be in the 30-day provision that the arbitrator would not lose. So the employee would not lose. We still haven't gotten a firm answer, but let's assume that the arbitrator's finding that the union was the primary and direct cause for the failure of the parties to meet the four-month requirement is something that is important to the decision and even necessary. As you pointed out, I think, or somebody pointed out, the largest chunk of so-called delay in this instance was in the selection of the arbitrator, right? Is that the 42 days? What was the 42 days? Well, the six weeks was the initial period. Where the union requested and received a panel of arbitrators. So that's the largest portion we can appoint to where the union delayed, right? But what bothers me about that is that the contract says that either the union or the director may submit a request to FMCS for a list of the arbitrators. So if that's the case, why isn't that delay equally attributable to the government as it is to the union? It's not the union who's primarily responsible for that. At least jointly, both the government and the union are responsible, right? The reason why the provision refers to both parties is that both parties may have initiated the arbitration. And the long-standing practice is that it is the movement that is responsible for advancing the grievance through the arbitration process. And that makes sense because many of these arbitrations are initiated by the union, perhaps in order to preserve rights, and may be ultimately abandoned. And it would make little sense to require the agency to advance the union's grievance through the steps of arbitration. It would essentially be requiring the agency to guess or speculate about whether the union isn't acting because they choose to abandon this matter or there's a delay. Where is that in the agreement that you're drawing that from? Because the agreement specifically says that either the agency or the union can take this step. So where is it that you're coming up with the argument that it's actually the grievance duty to do this? Well, I'm making an argument based on the party's past practice. How do we know that that's past practice? Well, we see in the past letters from the agency in which when the union, as the movement, has failed to advance through the steps as required by the four-month deadline, the agency then invokes the four-month provision. And the union has apparently acquiesced in this practice. Certainly, there's nothing in this record to suggest to the contrary. And the arbitrator noted in his decision that if this were the reverse situation where it was an agency's grievance and the agency had failed to properly advance it, then the union would be able to benefit from the four-month provision in the same manner. None of these past cases, the eight or ten of them, involved a situation where an arbitrator was appointed in time to hold a hearing, right? Yes, but in the material respect, according to the four-month deadline, they are the same. Because in each of these letters, the agency stated that the reason for terminating the grievance was because the hearing had not occurred within the four-month deadline. And the same is true here. The hearing did not occur. And to say that, again, to say otherwise would essentially… But I don't know why we should necessarily interpret those cases as applying, that past practice as applying the situation where an arbitrator was appointed in time to have a hearing. Because the language of the party's agreement requires that. And Mr. Mueller's argument to the contrary… It doesn't require it. Unlike the Supreme Court cases, the Supreme Court has said again and again and again, if there is a time limit, unless the agreement, unless the statute specifically provides a consequence for the failure to meet the time limit, the time limit has no effect. But the past practice demonstrates that the parties have used the four-month deadline to terminate the grievance. So there is the consequence. And the problem with Mr. Mueller's argument is that he provides no text-based reason why that same consequence should not apply when merely one more incremental step has passed. But the material deadline, which is the hearing, has still not occurred. So the past practice is relevant for providing that very consequence to the extent that it's not clear based on the agreement. Notably, Section 9 of the arbitration, the negotiated grievance procedure, which is at JA-42 and immediately precedes Section 10, provides that the consequences of failing to satisfy this. So if… I think my time is almost up. May I finish this talk? Not the standard view, but is this a question of law or a question of fact, how to interpret Section 10-4? This Court, in cases like Garcia and Appleberry, has said that interpreting a collective bargaining agreement is a question of law. I think that the question of if there were an ambiguity, that may be a different issue. But here the arbitrator said that this was clear and unambiguous. Let me just ask you one further question, which is the problem with Section 9, which I understand. You look at Section 9 and you say your argument was going to be the parties agree they will handle stuff in an expeditious manner and abide by the time limits. Well, what about the second sentence of that section, which says if these time limits are not met, the grievance will move to the next step as provided in Section 10 of this article? Doesn't that lend support to what Judge Dyke was saying, was that this is an example where the parties articulated what the consequence of not meeting the time frame is, which they failed to do with respect to the four-month deadline? Well, actually, so that's actually precisely the sentence I was hoping to address. This provision essentially says that the event associated with the time limit won't occur and the parties will instead move to the next step of the procedure in Section 10. So the four-month deadline appears in Section 10. It's the terminal subsection of Section 10. It's the final part of Step 4. So applying this sentence to the four-month deadline, when the four-month passes without the hearing, the hearing can no longer occur. And because this is the last matter that can occur in the four-step process, therefore, the arbitrator properly canceled the arbitration. There's nothing further that – there's no further steps to proceed to. And indeed, the very next paragraph in Section A of Section 11 says that the arbitrator can decide arbitrability. So the arbitrator properly did so in this case, and we respectfully request that the Court affirm his decision. Thank you. Mr. Landon, you have a few minutes remaining. Yes. The facts are simple. FMCS was notified on May 9th. They did not inform the arbitrator of his appointment until May 29th. The arbitrator never contacted the parties until June the 9th. Within that period of time, I agree with his honor that a hearing could have been held. Additionally, some credence has to be given to the significance of – some credence has to be given to the significance of the FMCS regulation. That places the conduct of hearing within the province of the arbitrator. The arbitrator takes no responsibility for the delay. He says that FMCS is not responsible for the delay, but there was ample time to have a hearing. And he could have determined that there should be a hearing on the merits. I'd like to correct the record. In the brief for the respondent at page 5, it says on April 24th, 2014, the GPO followed up with the union inquiring about the union's third strike. Counsel for the union quickly responded, noting he had an emergency that he attended to. That's totally incorrect, because they rely on Appendix 4. And if you examine Appendix 4, the arbitrator didn't say counsel, he said the union representative quickly responded. I've been the only counsel for the union over the last two and a half years. But I don't want to take credit for something that I did not do. Thank you. Thank you. We thank both parties and the case is submitted. We'll take a brief recess. All rise. The court will take a short recess.